**GEORGIA–PACIFIC CORPORATION,**
Plaintiff–Cross Appellant,

v.

**UNITED STATES GYPSUM COMPA-
NY and L & W Supply Corpora-
tion, Defendants–Appellants.**

Nos. 97–1238, 97–1244.

United States Court of Appeals,
Federal Circuit.

Nov. 1, 1999.

Albert E. Fey, Fish & Neave, of New York, New York, argued for plaintiff-cross appellant. With him on the brief were W. Edward Bailey and Steven C. Cherny. Of counsel on the brief was Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell, of Wilmington, Delaware.

James M. Amend, Kirkland & Ellis, of Chicago, Illinois, argued for defendants-appellants. With him on the brief were David K. Callahan and Christian C. Taylor. Of counsel on the brief was Jay I. Alexander, Kirkland & Ellis, of Washington, DC.

Before BRYSON, Circuit Judge, ARCHER,* Senior Circuit Judge, and GAJARSA, Circuit Judge.

* Senior Circuit Judge Archer vacated the position of Chief Judge on December 24, 1997.

1. The '569 patent is not at issue in this appeal.

## DECISION

PER CURIAM.

United States Gypsum Company and L W Supply Corporation (USG) appeal the judgment of the United States District Court for the District of Delaware holding that USG infringed claims 1, 2, and 5 of U.S. Patent No. 4,647,496 (the 496 patent) and claims 1, 6, 9, 10, 12, 15, and 17 of U.S. Patent No. 5,371,989 (the 989 patent), both patents being owned by Georgia–Pacific Corporation (Georgia–Pacific). In addition, USG appeals the district courts denial of its motion for judgment as a matter of law (JMOL) that all of the asserted claims are invalid due to obviousness in light of the prior art and that the asserted claims of the 989 patent are invalid for obviousness-type double patenting over the 496 patent and U.S. Patent No. 4,810,569 (the 569 patent).[1] USG also appeals the order of the district court granting a new trial rather than granting USGs post trial motion for JMOL with respect to infringement of claim 11 of the 496 patent, claim 8 of the 989 patent and claim 1 and 2 of U.S. Patent No. 5,319,900 (the 900 patent), also owned by Georgia–Pacific. Georgia–Pacific cross appeals the district courts failure to find USGs infringement of Georgia–Pacifics patents willful and its order granting a new trial to USG with respect to infringement of claim 11 of the 496 patent, claim 8 of the 989 patent, and claims 1 and 2 of the 900 patent. We affirm-in-part, reverse-in-part, vacate-in-part and remand.

## BACKGROUND

The patents at issue relate to fiberglass[2] mat-reinforced gypsum boards and the use of such boards in exterior insulation systems (EISystems).

Gypsum wallboard traditionally consists of a hardened gypsum core sandwiched

2. The terms "fiberglass" and "glass" are used interchangeably herein.

between paper facing or similar reinforcing sheets. It is typically manufactured on a conveyor system. The gypsum is crushed and ground and mixed with water to form a core slurry. The core slurry is spread onto a first sheet of paper. A second sheet of paper is placed on top of the wet slurry. This combination is passed under a roller to achieve the desired thickness. After the core gypsum sets or hardens, the board is cut and then turned over and dried in a kiln.

Exterior gypsum wallboard, sometimes referred to as sheathing, is a component in an EISystem. The gypsum sheathing is attached to a frame of a house. Despite the use of water-resistant additives as well as water-repellent facings gypsum sheathing continued to be susceptible to degradation by water. If the paper faced gypsum board became wet, the paper facing would often peel away from the gypsum core.

The use of fiberglass mats instead of paper mats was known to solve peeling. The manufacture of a fiberglass gypsum board on the same production line used for the manufacture of traditional paper faced gypsum board remained a problem. Fiberglass matting, being more porous than paper matting, allowed the gypsum slurry to bleed through and foul the production line and, particularly, the rollers. Although the production line could be stopped to clean the gypsum buildup off the manufacturing rollers, some of the rollers, such as those in or near the kiln, were not easily accessible for such clean up.

Georgia–Pacific realized that the problem of the gypsum slurry bleeding through the fiberglass could be solved by controlling the viscosity of the slurry. Georgia–Pacific patented this invention as well as the use of such a fiberglass faced gypsum board in an EISystem in the patents at issue.

The 496 patent contains claims directed to an EISystem installed using glass mat faced gypsum boards. The jury found that USG infringed claims 1, 2, 5, and 11 of the 496 patent. The jurys verdict was sustained by the district court, except for claim 11. The court held that Georgia–Pacific had not adduced substantial evidence to support an infringement verdict as to claim 11 and granted USG a new trial.

The jury found that USG infringed asserted claims 1 and 2 of the 900 patent. This patent is directed to a fiberglass mat-reinforced gypsum board which contains fire and water-resistant additives. The district court held that the evidence did not support infringement of these two claims and granted USG a new trial.

The final patent on appeal, the 989 patent, contains claims directed to both fiberglass mat-reinforced gypsum boards and EISystems using such boards. Each of the asserted claims 1, 6, 8, 9, 10, 12, 15 and 17 was found by the jury to be infringed by USG. In this case the district court sustained the infringement verdict as to all claims except claim 8. This claim required the use of certain fire-resistant additives. Like its holding as to claims 1 and 2 of the 900 patent the court found there was not substantial evidence to support infringement and granted USG a new trial.

The parties have dealt with the claims under five categories; namely, sandwiched claims, faced claims, system claims, additive claims and board claims. The sandwiched claims, whether describing the board or the use of the board in an EISystem, contain the limitation that the gypsum core is sandwiched between two sheets of porous fiberglass mat. The faced claims all have the limitation that the gypsum board be faced with a fibrous mat, or that it be glass-mat faced. The system claims relate to the use of fiberglass mat-reinforced gypsum boards as the substrate for layered systems used to finish the exterior portions of buildings. The additive claims contain the limitation that the claimed fiberglass mat-reinforced gypsum board contain additives which improve the fire and/or water-resistant properties of the boards. Finally the board claims all claim a fiberglass mat-reinforced gypsum

board (which in some cases contains fire or water-resistant additives).

## DISCUSSION

### I. *Obviousness–Type Double Patenting*

USG contends that the 989 patent, which issued more that five years after the 569 patent, was invalid for obviousness-type double patenting over the claims of the 496 and 569 patents. Georgia–Pacific, however, asserts that there are patentable distinctions between the claims of these patents, and that USG presented no competent evidence in support of its contention. The district court did not dwell on this issue, and merely dismissed it (along with certain other contentions of USG in its motion for JMOL) by stating that it had reviewed them and finds them to be without merit.

Double patenting is a question of law, which we review *de novo*. *See General Foods Corp. v. Studiengesellschaft Kohle*, 972 F.2d 1272, 1277, 23 USPQ2d 1839, 1843 (Fed.Cir.1992). *De novo* review is appropriate because double patenting is a matter of what is claimed, and therefore is treated like claim construction upon appellate review. *See id.* at 1277, 23 USPQ2d at 1843. Obviousness-type double patenting is a judicially created doctrine grounded in public policy, which prevents the extension of the term of the original patent via the patenting of an obvious variation. *See In re Longi*, 759 F.2d 887, 892, 225 USPQ 645, 648 (Fed. Cir.1985). Under obviousness-type double patenting, a patent is invalid when it is merely an obvious variation of an invention disclosed and claimed in an earlier patent by the same inventor. *See General Foods*, 972 F.2d at 1278, 23 USPQ2d at 1843; *In re Vogel*, 57 C.C.P.A. 920, 422 F.2d 438, 442, 164 USPQ 619, 622 (1970). Accordingly, analysis of the claims at issue is the first step in determining if the second invention is merely an obvious variation of the first.

In this case, the jury found that USG did not infringe claim 1 of the 569 patent, but held that claims 1, 6, 8, 9, 10, 12, 15, and 17 of the 989 patent had been infringed. USG contends that the claims of the 989 patent are invalid due to obviousness-type double patenting.

Claim 1 of the 569 patent reads as follows:

> Gypsum board comprising a set gypsum core sandwiched between two sheets of porous glass mat, each of which has an inner and outer surface, said mat comprising randomly distributed glass fibers bonded by an adhesive material, the inner surface of each of said mats adhered to said gypsum core by a portion of the set gypsum comprising said core, the outer surface of one of said mats having portions thereof coated with set gypsum comprising portions of the set gypsum of said core, and the outer surface of the other of said mats being substantially free of set gypsum.

Claim 1 of the '989 patent reads as follows:

> A gypsum board comprising a set gypsum-containing core sandwiched between two sheets of porous glass mat, each of said mats consisting of randomly distributed glass fibers bonded by an adhesive material, said mat adhered to set gypsum core by a portion of said set gypsum, at least a first of said mats having an outer surface which is substantially free of set gypsum.

These two claims are very similar. Indeed, the basic construction of the boards is identical, which is clear from this comparison of the language of the claims:

| Patent '569, claim 1 | Patent '989, claim 1 |
| --- | --- |
| Gypsum board comprising a set gypsum core sandwiched between two sheets of porous glass mat | A gypsum board comprising a set gypsum-containing core sandwiched between two sheets of porous glass mat. |
| the inner surface of each of said mats adhered to said gypsum core by a portion of the set gypsum comprising said core | said mat adhered to set gypsum core by a portion of said set gypsum |
| the outer surface of the other of said mats being substantially free of set gypsum. | at least a first of said mats having an outer surface which is substantially free of set gypsum. |

Because these two claims are so similar, we must look to see if there is anything to distinguish claim 1 of the '989 patent from claim 1 of the '569 patent. There are two differences between these claims. The first difference arises from the outer surfaces of the boards described by the claims. Claim 1 of the '569 patent recites

> the outer surface of one of said mats having portions thereof coated with set gypsum of said core, and the outer surface of the other of said mats being substantially free of set gypsum.[3]

Claim 1 of the '989 patent requires a sandwiched gypsum board that has

> at least a first of said mats having an outer surface which is substantially free of set gypsum.

Claim 1 of the '989 patent does not require that one side of the board be "coated with set gypsum." The failure to claim the gypsum coating, however, does not distinguish claim 1 of the '989 patent from claim 1 of the '569 patent.

Claim 1 of the '569 patent recites a board made up of two glass fiber mats, a gypsum slurry sandwiched between them, with one outer surface of a glass fiber mat coated by gypsum slurry that seeped through the mat while the other outer surface is free of gypsum. Claim 1 of the '989 patent recites a board made up of two glass fiber mats, a gypsum slurry sandwiched between them, with at least one outer surface free of set gypsum. No claim is made as to the nature of the other side of the board in claim 1 of the '989 patent. The prior art shows that making a board with a gypsum coating on at least one side was well known. This minor linguistic difference does not serve to distinguish claim 1 of the '989 patent from claim 1 of the '569 patent in a nonobvious way,

because the '989 claim language can be used to describe a set of boards that are described by the '569 patent or vary in an obvious manner based on the amount of gypsum on the outer surface of one of the glass mats.

Based on their language, claim 1 of the '989 patent is merely an obvious variation of claim 1 of the '569 patent with respect to the outer surfaces of the board, because the failure to claim anything with respect to the characteristics of one outer surface of the board does not distinguish these claims. The language of the claims bears out this obvious variation, as both claim that at least one outer surface of the board is substantially gypsum free.

Georgia–Pacific argues that claim 1 of the '989 patent is patentably distinct from claim 1 of the '569 patent. Claim 1 of the '569 patent reads as follows:

> said mat *comprising* randomly distributed glass fibers bonded by an adhesive material,

whereas claim 1 of the '989 patent reads as follows:

> each of said mats *consisting* of randomly distributed glass fibers bonded by an adhesive material.

Georgia Pacific argued at trial that the terms "comprise" and "consist" have different meanings; the appellee is correct in this contention. The Manual of Patent Examining Procedure explains the difference between "comprise" and "consist" in patent law as follows:

> The transitional term "comprising" ... is inclusive or open-ended and does not exclude additional, unrecited elements or method steps.[4]
> The transitional phrase "consisting of" excludes any element step, or ingredient not specified in the claim.[5]

---

3. Despite USG's assertion that claim 1 of the '569 patent "has a 'gypsum-free' limitation for *both* sides" USG is mistaken. Claim 1 of the '569 patent describes a board with gypsum slurry from the core covering the outer surface of one of the fiberglass mats, while the outer surface of the other mat is substantially free of set gypsum.

4. For this definition, see *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 229 USPQ 805 (Fed.Cir.1986), and *In re Baxter*, 656 F.2d 679, 210 USPQ 795 (CCPA 1981).

5. For this definition, see *In re Gray*, 53 F.2d 520, 19 C.C.P.A. 745 (CCPA 1931), and *Ex parte Davis*, 80 USPQ 448, 450, 1949 WL 3555 (Bd.App.1948).

Patent and Trademark Office, Department of Commerce, *Manual of Patent Examining Procedure,* § 2111.03 (6th ed.1997). From these definitions it is clear that "comprise" is a broader term than "consist." The set of mats that are "comprised" of glass fibers includes the subset of mats that "consist" of glass fibers and also includes mats made up of glass fibers and other substances. Whereas, mats that "consist" of glass fibers are made up of glass fibers and nothing else. In this case, claim 1 of the earlier '569 patent uses the broader term "comprise," while claim 1 of the later '989 patent uses the narrower term "consist." Thus, any mat that meets the "consist" requirement of the '989 patent would also meet the "comprise" requirement of the '569 patent. In effect, the invention claimed in the '989 patent is, with respect to the glass mats, merely a subset of the invention claimed in the '569 patent.

After analyzing the language of the claims, it is clear that claim 1 of the '989 patent is merely an obvious variation of claim 1 of the '569 patent. While claim 1 of the '989 patent is slightly broader than claim 1 of the '569 patent with respect to the outer surfaces of the board, this difference is not enough to distinguish the two claims. With respect to the composition of the glass mats, the language and the disclosure of the '989 patent not only fail to distinguish it from the '569 patent, but indicate that it is merely a subset of the '569 patent. These differences are not sufficient to render the claims patentably distinct, and therefore, claim 1 of the '989 patent is invalid.

The dependent claims of the '989 patent—claims 6, 8, 9, 10, 12, and 15—are likewise invalid, as none of them adds any limitation that is sufficient to render it nonobvious in light of the claims of the '569 and '496 patents. Claims 6 and 8 recite the gypsum board of claim 1 with the gypsum core comprising a water-resistant

additive (claim 6) or a fire-resistant additive (claim 8). The record reflects that the use of water-resistant and fire-resistant additives in the gypsum core of gypsum board was well known in the art, and the addition of those limitations does not render nonobvious the otherwise obvious gypsum board of claim 1. Claim 9 of the '989 patent largely tracks claims 4 and 6 of the '496 patent. The only difference between claims 4 and 6 of the '496 patent and claim 9 of the '989 patent is that claim 4 requires the outer surface of both glass mats to be substantially gypsum-free, claim 6 requires the outer surface of one of the glass mats to be gypsum-coated and the outer surface of the other to be gypsum-free, and claim 9 requires at least one of the mats to have an outer surface that is substantially gypsum free. Those differences in language do not render claim 9 of the '989 patent nonobvious over the prior patented claims. Claims 10 and 12 of the '989 add further limitations to the claim 9, but those limitations do not render claims 10 and 12 nonobvious in light of the claims of the '496 patent and the prior art. *See* claim 19 of the '496 patent (reciting an insulating material "substantially free of channels penetrating there through and between [the] inner and outer surfaces"); claim 5 of the '496 patent (reciting an exterior insulation system "including a reinforcing member sandwiched between said insulating material and said finishing material"); '989 patent, col. 7, lines 43–47 (use of a reinforcing member sandwiched between the insulating material and the finishing material is known in the art). Finally, claim 15 of the '989 patent does not add any limitation that would render the invention of that claim nonobvious in light of claims 4 and 6 of the '496 patent, for the reasons set forth in the discussion of claim 9 of the '989 patent, above.

Furthermore, claim 17 of the '989 patent is similarly invalid.[6] Claim 1 of the '569 patent recites in part:

claim 1. USG does not contend the differences between claim 17 and claim 1 (and its dependent claims) affect the double patenting analysis.

---

6. Claim 1 is an independent claim upon which claims 6, 8, 9, 10, 12, and 15 of the '989 patent depend. Claim 17 is an independent claim and does not depend upon

two sheets of porous glass mat, each of which has an inner and outer surface, said mat comprising randomly distributed glass fibers bonded by an adhesive material....

The corresponding recitation in claim 17 of the '989 patent reads:

at least one porous, non-woven glass mat ... said mat consisting of randomly distributed glass fibers bonded by an adhesive material....

Except for the use of "comprising" in the '569 patent and "consisting of" in the '989 patent, the "said" clause in both is identical, and·the clause "randomly distributed glass fibers" denotes a non-woven glass mat, so with regard to the structure of the mat, the two claims are identical. The use of the term "comprising" in the '569 patent ·and "consisting of" in the '989 patent renders the scope of the two claims different, but the difference is not sufficient to render claim 17 of the '989 patent nonobvious in light of claim 1 of the '569 patent, because it would have been obvious to construct the mat only out of glass fibers and adhesive, rather than out of glass fibers and adhesive and other unspecified substances.

There are no other differences between the two claims that suffice to render claim 17 nonobvious. It is true that claim 1 of the '569 patent requires two sheets of glass mat, while claim 17 of the '989 patent requires only "at least one" sheet of glass mat, but since a claim requiring two sheets anticipates a claim requiring at least one sheet, there is no difference flowing from that difference in the claim language that renders the claim patentably distinct. It is likewise true that claim 1 requires that one of the two glass mats must have "portions thereof coated with the set gypsum of said core," and also requires that the "outer surface of the other of said mats be[ ] substantially free of set gypsum." Claim 17, on the other hand, requires only that "an outer surface of said mat is substantially free of gypsum." Again, however, that difference in language does not reflect a difference in substance. Each limitation of a claim to a board that has at

least one glass mat that is free of gypsum is met by a claim to a board that has two glass mats, one of which is at least partially coated with gypsum and the other of which is substantially free of gypsum. Thus, claim 17 of the '989 patent does not recite an invention that is nonobvious in light of the invention of claim 1 of the '569 patent, and it is invalid for obviousness-type double patenting.

Because we conclude that claims 1, 5, 8, 9, 10, 12, 15 and 17 of the '989 patent are invalid, we vacate the district court's judgment holding these claims infringed.

## II. *Obviousness*

 USG appeals the judgment below and seeks review of the jurys finding that the asserted claims of the patents at issue were not invalid and the district courts denial of its motion for JMOL. Patents are presumed valid by statute. *See* 35 U.S.C. 282 (1994). The burden is on the party asserting invalidity to prove it with facts supported by clear. and convincing evidence. *See Weatherchem Corp. v. J.L. Clark, Inc.*, 163 F.3d 1326, 1334–35, 49 USPQ2d 1001, 1007–8 (Fed.Cir.1998). Obviousness is a legal determination which we review *de novo*, while we review underlying factual findings under a deferential standard. *See id.* In a jury case, we review a denial of JMOL to determine whether the jurys factual determinations are supported· by substantial evidence and, if so, whether those findings support the legal conclusions drawn by the jury in reaching its· verdict. · *See Read Corp. v. Portec, Inc.*, 970 F.2d 816, 821, 23 USPQ2d 1426, 1431 (Fed.Cir.1992); *Modine Mfg. Co. v. Allen Group, Inc.,*, 917 F.2d 538, 541, 16 USPQ2d 1622, 1624 (Fed.Cir.1990).

### A. The· board claims

USG argues that the board claims are invalid as a matter of law under 35 U.S.C. § 103 based on the combination of the Morrone reference (Canadian Patent No. 993779) and the Rigips reference (German Patent ·No. 7806114). Because we con-

clude that claims 1, 6, 8, 17 of the 989 patent are invalid for obviousness-type double patenting, we consider USGs contentions with respect to the remaining board claims claims 1 and 2 of the 900 patent.

USG's argues generally that the board claims are obvious in light of the prior art, including the Morrone and Rigips references. However, USG does not specifically address why these references would invalidate claims 1 and 2 of the 900 patent. Accordingly, we determine that the district court correctly upheld the jurys conclusion that USG failed to carry its burden to show facts supported by clear and convincing evidence that claims 1 and 2 of the 900 patent were invalid due to obviousness. The district court did not err in denying USGs motion for JMOL.

### B. The system claims

■ With respect to the system claims, USG argues that these claims are simply the use of old boards in an old system. Claim 1 of the 496 patent is representative of the system claims: [7]

> An exterior insulation system for a building comprising a glass mat-faced gypsum support surface, insulating material having an inner surface and an outer surface, the inner surface of which is adhered to said support surface by an adhesive material, the insulating material being substantially free of channels penetrating there through and between said inner and outer surfaces, and an exterior finishing material overlying the outer surface of said insulating material.

USG contends that it was known that paper reinforced gypsum boards, because of the problems associated with exposure to water, constituted the weak link of EISystem and it, therefore, would have been obvious to use a fiberglass board.

None of the prior art references relied on by USG suggests using a glass mat-faced gypsum board as part of an exterior system. USGs own expert admitted on cross-examination that he knew of no prior

art references that suggested the use of a fiberglass mat-faced gypsum board in an EISystem. Moreover, the boards claimed by Georgia Pacific in its EISystem were not old boards, but instead were themselves patented products. The evidence also established that there was a long-felt need to find a substrate suitable in an EISystem to which insulation could be glued rather than nailed, as well as one that would overcome the problems of the paper delaminating.

Given the evidence presented, which demonstrated the need for a better exterior system, the lack of suggestion in the prior art to use a system with a glass mat-faced board to meet this need, and the success the patented system achieved, there was substantial evidence to support the jurys finding of non-obviousness of the system claims. The district court did not err in denying USGs motion for JMOL.

### III. Claim interpretation and infringement analysis

■ Literal infringement involves a two step process: the proper construction of the asserted claim and a determination whether the claim as properly construed reads on the accused product or method. See Markman v. Westview Instr., Inc., 52 F.3d 967, 976, 34 USPQ2d 1321, 1326 (Fed. Cir.1995) (in banc), affd, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The first step, claim construction, is a question of law, which we review de novo. See id. at 979, 34 USPQ2d at 1329.

### A. The sandwiched claims

■ Claim 11 of the 496 patent is representative of the sandwiched claims at issue in this case:

> An exterior finishing system for a building comprising an underlying structural support element ... said support element including gypsum board comprising a set gypsum core sandwiched between two sheets of porous glass fiber mat, the gypsum core including one or more additives which are effective in

7. Claims 1, 2, and 5 of the 496 patent can be classified as system claims.

improving the water-resistant properties of the board . . . .

(Emphasis added.)

The jury found that USG infringed Claim 11 of the 496 patent, which uses the term sandwiched, but the district court granted USG a new trial on the issue of whether this claim was infringed. The district court held that Claim 11 does not claim a board where the gypsum core may penetrate through and onto the outside of the mat.

The district court found that the word sandwiched had not been given a special definition in the patents and that it did not have a special meaning in the gypsum board manufacturing context. The court therefore gave the word its ordinary meaning viz, to insert or place between and instructed the jury that sandwich means between two things and not through and outside one of the two things. After the jury returned a verdict of infringement in favor of Georgia–Pacific with respect to the claims of the 989 patent, the district court ruled on USGs JMOL motion that the construction of sandwiched did not constrain it from finding that the claims could cover a board with gypsum core between two porous glass mats with gypsum bleeding through the outer surface of one porous mat. The court ruled that because these claims specifically required only one side to be gypsum free, by implication the other side need not be gypsum free.

Georgia–Pacific argues that it is clear from the patent that it contemplates that gypsum might come through the glass mat on one side. There would be no reason to specify that one surface is to be gypsum-free if sandwiched means that the gypsum could not go through either surface. Georgia–Pacific contends that sandwiched cannot mean that the gypsum must stay between both of the glass mats.

We agree with Georgia–Pacific. There would be no need to specify a gypsum free surface if the sandwiched term meant that

the gypsum could not go through one of the glass mats. Further, other dependent claims, such as claim 8 of the 496 patent, specifically claim one of the fiberglass mats has an outer surface with portions thereof coated with set gypsum.

As we have discussed, the district court interpreted the sandwiched claim limitations in the patents as not precluding the gypsum core from flowing through one of the glass mats. In the case of Claim 11, however, the district court interpreted sandwiched differently i.e., that the gypsum core must remain between the mats.

Unless the patent otherwise provides, a claim term cannot be given a different meaning in the various claims of the same patent. *See Southwall Tech., Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1579, 34 USPQ2d 1673, 1679 (Fed.Cir. 1995) (holding that claim term found in different claims must be interpreted consistently); *see also Fonar Corp. v. Johnson & Johnson,* 821 F.2d 627, 632, 3 USPQ2d 1109, 1113 (Fed.Cir.1987.) (holding that a term used in one claim had the same meaning in another claim). Interpretation of a disputed claim term requires reference to the other claims. *See Southwall,* 54 F.3d at 1579, 34 USPQ2d at 1679. We are convinced that the district courts interpretation of sandwiched as not precluding the flow through of the gypsum core on one of the fiberglass mats should have been applied to that term in claim 11 absent any indication that a different meaning was contemplated. The evidence demonstrates that USG infringed claim 11 of the 496 patent when it is so interpreted. We therefore reverse the district courts grant of a new trial and reinstate the jurys finding of infringement with respect to claim 11 of the 496 patent.

**B. The glass mat-faced claims**

USG argues that the district court misconstrued the meaning of the limitation glass mat-faced and that when properly construed the faced claims [8] could not be

8. Claims 1, 2, and 5 of the '496 patent and

claims 1 and 2 of the '900 patent can be

infringed by USGs fiberglass gypsum board.

Claim 1 of the 496 patent is representative of these claims:

> An exterior insulation system for a building comprising a *glass mat-faced* gypsum support surface, insulating material having an inner surface and an outer surface, the inner surface of which is adhered to said support surface by an adhesive material, the insulating material being substantially free of channels penetrating there through and between said inner and outer surface, and an exterior finishing material overlying the outer surface of said insulating material. (Emphasis added.)

USG asserts that glass mat faced means that the surface of the board facing out from the studs to which insulation is applied is an exposed, non-gypsum covered glass mat. The district court, however, adopted Georgia–Pacifics construction that the term glass mat-faced means glass mat surface reinforcing material. Because USGs board is reinforced with fiberglass mats the court upheld the jurys finding that the faced claims were infringed.

USG argues that during prosecution of a different patent application in which claims were rejected in light of the Pilgrim patent, U.S. Patent No. 4,378,405, Georgia–Pacific surrendered any interpretation of the term faced that would include a completely embedded or coated fiberglass mat. The prosecution history statement relied on by USG was made by Georgia–Pacific nine months after the glass mat-faced claims of the 496 patent issued. There Georgia–Pacific stated:

> [T]he Pilgrim patent does not disclose glass mat-faced gypsum board. To the contrary, this patent discloses a gypsum board in which the glass mat *is covered by a thin layer of gypsum* (emphasis original).

USG argues that Georgia–Pacific used the term faced to distinguish its board from prior art fiberglass mat-reinforced boards classified as "faced" claims.

based upon the difference between leaving the fiberglass mat on the working surface exposed versus completely embedding it.

Georgia–Pacific argues that this post-issuance statement is extrinsic evidence and should be rejected because the intrinsic evidence alone resolves any ambiguity of this disputed claim term.

■ The specification of the patent in suit is the best guide to the meaning of a disputed term. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582–83, 39 USPQ2d 1573, 1576–77 (Fed.Cir.1996); *see also Bell & Howell Document Management Prod. Co. v. Altek Sys.*, 132 F.3d 701, 705, 45 USPQ2d 1033, 1037 (Fed.Cir. 1997)(When construing a claim, a court should look first to the intrinsic evidence, i.e., the claims themselves, the written description portion of the specification, and the prosecution history.) Additionally, when intrinsic evidence is unambiguous, it is improper for the court to rely on extrinsic evidence to contradict the meaning of the claims. *See Pitney Bowes, Inc., v. Hewlett–Packard Co.*, 182 F.3d 1298, 1308–9, 51 USPQ2d 1161, 1167–68 (Fed.Cir. 1999).

The 496 patent states at col. 9, lines 39–43:

> Although improvements in an EISystem can be realized by the use of a gypsum core which has but one of its surfaces faced with fibrous mat as described herein, it is preferred that both surfaces of the core be faced with substantially the same fibrous material. . . .

Because the 496 patent refers explicitly to both surfaces of the board being faced, faced cannot mean only the surface facing out from the studs as is necessary for USG to prevail. Furthermore, in the prosecution of the 496 patent Georgia–Pacifics patentee declared to the PTO: One of the glass fiber mat-reinforced surfaces was substantially gypsum-free and the opposite surface was substantially gypsum covered. Thus, the glass mat-faced term was repre-

sented to mean both surfaces of the board one of which was described as covered with gypsum. For these reasons we are convinced that the district court properly construed the faced claims.

■ We also note that for Georgia–Pacific to be bound by the statement made to the PTO in connection with a later prosecution of a different patent, the statement would have to be one that the examiner relied upon in allowing the claims in the patent at issue. *See Mannesmann Demag Corp. v. Engineered Metal Prods. Co.,* 793 F.2d 1279, 1284–85, 230 USPQ 45, 48 (Fed.Cir.1986) (In cases where a patentees amendments were not required in response to an examiners rejection or critical to the allowance of the claims, no estoppel has been found.)

### C. The additive claims

■ Georgia–Pacific in its cross appeal argues that the court erred in granting USG a new trial on the additive claims [9] and that the jurys finding of infringement should be reinstated. USG on the other hand contends that its motion for JMOL should have been granted.

Claim 1 of the 900 patent is representative of the additive claims:

> Gypsum board comprising a set gypsum core faced with a fibrous mat, the gypsum core including one or more *additives* which are effective in simultaneously improving the water resistance and fire resistance properties of the board in an amount at least sufficient to impart to the board improved water resistance and fire resistance properties.

(Emphasis added.)

The district court held that even if it were to accept Georgia–Pacifics evidence revealing that it found the presence of glass fibers in the gypsum core of USGs board, the testimony did not demonstrate the presence of enough fibers to confer improved fire resistant properties. Thus, the court found that the jury could not reasonably conclude that USGs board contained fire resistant additives in an amount

sufficient to meet this limitation so that claims 1 and 2 of the 900 patent, and claim 8 of the 989 patent would be infringed. The court then entered an order granting USGs motion for a new trial as to these claims.

■ Ultimately, the decision as to whether a new trial should be granted is within the discretion of the trial court. *See Registration Control Systems, Inc. v. Compusystems, Inc.,* 922 F.2d 805, 809, 17 USPQ2d 1212, 1215 (Fed.Cir.1990) (citing *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980)); *see also Wagner v. Fair Acres Geriatric Center,* 49 F.3d 1002, 1017 (3d Cir.1995). Accordingly, we will overturn the district courts decision only if the court abused its discretion. *See Registration Control,* 922 F.2d at 809; *Wagner,* 49 F.3d at 1017.

■ Accepting Georgia–Pacifics evidence, which USG disputed, some fire resistant material in the form of glass fibers was found in the gypsum core of USGs boards. These fibers, however, were not shown to be sufficient in the courts view to demonstrate fire resistant properties. The court concluded for this reason that the jurys verdict was not adequately supported by the evidence but that the insufficiency of proof was not enough to grant USGs motion for JMOL. When a verdict is against the weight of the evidence a court may grant a new trial. *See, e.g., Moxness Products, Inc. v. Xomed, Inc.,* 891 F.2d 890, 893, 13 USPQ2d 1169, 1172 (Fed.Cir. 1989); *see also Wagner,* 49 F.3d at 1017. The district court therefore did not err in granting a new trial on the issue of infringement by USG in regard to claims 1 and 2 of the 900 patent. Because we conclude that claim 8 of the 989 patent is invalid due to obviousness-type double patenting, we vacate the district courts grant of a new trial as to this claim.

**9.** Claims 1 and 2 of the 900 patent can be classified as additive claims.

**1334**

IV. Willful Infringement

■ Georgia–Pacific contends in its cross appeal that the district court erred in failing to find that USGs infringement was willful. Willful infringement is a question of fact and must be established by clear and convincing evidence, for "the boundary between unintentional and culpable acts is not always bright." *Pall Corp. v. Micron Separations, Inc.,* 66 F.3d 1211, 1221, 36 USPQ2d 1225, 1232 (Fed.Cir.1995); *American Med. Sys. v. Medical Eng'g Corp.,* 6 F.3d 1523, 1530–31, 28 USPQ2d 1321, 1325–26 (Fed.Cir.1993). Because willfulness raises issues of reasonableness and prudence, and is often accompanied by questions of intent, belief, and credibility, appellate review requires appropriate deference to the special role of the trial court in making such determinations. *See Sensonics, Inc. v. Aerosonic Corp.,* 81 F.3d 1566, 1571, 38 USPQ2d 1551, 1555 (Fed.Cir.1996); *S.C. Johnson & Son, Inc. v. Carter–Wallace, Inc.,* 781 F.2d 198, 201, 228 USPQ 367, 369 (Fed.Cir.1986). Thus, a finding that infringement was not willful will be sustained unless the reviewing court has a definite and firm conviction that the trier of fact erred. *See Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.,* 34 F.3d 1048, 1057, 32 USPQ2d 1017, 1024 (Fed.Cir.1994).

■ Georgia–Pacific asserts that the legal opinion which USG received was flawed and therefore USG was not entitled to rely on it. Georgia–Pacifics attack on the legal opinion is without merit. The court found that while the opinion of counsel might have been more complete and might have better predicted the issues that ultimately went to trial, it is the type of opinion on which U.S. Gypsum should have felt comfortable in relying on. Furthermore, the court found that USG relied upon that opinion and did not proceed with a wrongful intent or in a reckless disregard of Georgia–Pacifics rights. We conclude that the evidence supports the district courts holding that USG did not willfully infringe.

CONCLUSION

For the reasons stated, we affirm the judgment of the district court with respect to infringement of claims 1, 2 and 5 the 496 patent, reverse the courts grant of USGs motion for a new trial with respect to claim 11 of the 496 patent and reinstate the jurys finding of infringement of that claim. We vacate the courts judgment with respect to infringement of claims 1, 6, 9, 10, 12, 15 and 17 of the 989 patent, and vacate the courts grant of a new trial with respect to claim 8 of the 989 patent. We affirm the courts grant of a new trial with respect to claims 1 and 2 of the 900 patent. The case is remanded for further proceedings consistent with this opinion.

COSTS

No costs.

*AFFIRMED–IN–PART, REVERSED–IN–PART, VACATED–IN–PART, AND REMANDED*