**GENEVA PHARMACEUTICALS, INC., et. al., Plaintiff,**

v.

**GLAXOSMITHKLINE PLC and Smithkline Beecham Corporation, d/b/a Glaxosmithkline Inc., Defendants.**

Nos. CIV.A. 2:01CV391, CIV.A. 2:01CV677, CIV.A. 2:01CV925.

United States District Court, E.D. Virginia, Norfolk Division.

Feb. 25, 2002.

Conrad Moss Shumadine, Wilcox & Savage, Norfolk, VA, Leslie Morioka, DimitriosTheodore Drivas, Louis Sebastian Silvestri, White & Case LLP, New York, NY, for Geneva Pharmaceuticals, Inc.

Alan Dale Albert, Troutman Sanders Mays & Valentine LLP, Norfolk, VA, William Michael Merone, William K. Wells, Jr., Thomas J. Meloro, Steven Jeffrey Lee, Jeremiah Francis Manning, Larissa Ann Soccoli, Kenyon & Kenyon, New York, NY, for Teva Pharmaceuticals USA, Inc.

Beth Hirsch Berman, Hofheimer Nusbaum, P.C., Norfolk, VA, Christy Lynn Green, Joseph Francis Jennings, Knobbe Martens Olson & Bear LLP, Newport Beach, VA, for Ranbaxy Pharmaceuticals, Inc.

Liam O'Grady, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, Kelly Ann Casey, Richard Lawrence Rainey, Walter Wayne Brown, Russell Leon Sandidge, Finnegan Henderson Farabow Garrett & Dunner LLP, Atlanta, GA, Stephen Edward Noona, Kristan Boyd Burch, Kaufman & Canoles, PC, Norfolk, VA, for Glaxosmithkline PLC.

## OPINION AND ORDER

MORGAN, District Judge.

This matter comes before the Court on Plaintiff Teva Pharmaceuticals' (Teva) mo-

tion for summary judgment, alleging that both U.S. Patent Nos. 4,560,552 (the '552 patent) and 6,218,380 B1 (the '380 patent) are invalid on the grounds of obviousness-type double patenting. Both are owned by Defendant Glaxosmithkline, et. al., (Defendants and all predecessors in interest are collectively referred to as GSK). GSK filed a cross-motion for partial summary judgment, arguing that these same patents are not invalid for double patenting as a matter of law. Both motions are pursuant to Federal Rule of Civil Procedure 56. After a hearing on December 14, 2001, the Court GRANTED GSK's motion with regard to the '552 patent, because Title 35 U.S.C. § 121 precludes it from legal attack in this Court. The Court further GRANTED Teva's motion with regard to the '380 patent, FINDING that patent invalid because of obviousness-type double patenting. This opinion further sets forth the reasoning for the Court's decision.

### FACTUAL [1] AND PROCEDURAL BACKGROUND

While it is not necessary to repeat the factual background contained in the Court's August 27, 2001 order declining to dismiss or transfer venue in the related matter, Geneva Pharmaceuticals v. GSK,[2] a brief factual recitation is appropriate.

AUGMENTIN® is an oral antibacterial combination consisting of the antibiotic amoxicillin and the β-lactamase inhibitor, potassium clavulanate, which is the potassium salt form of clavulanic acid. GSK has been marketing AUGMENTIN® in the United States since the FDA first approved the antibiotic in 1984. AUGMENTIN® and its component parts are the subject of a number of patents. The subject of Plaintiffs' motion is that its proposed generic version of AUGMENTIN® will not infringe upon the '552 patent and '380 patent held by Defendant GSK, which expire in 2002 and 2017, respectively, because they are invalid due to double patenting. The original patents for AUGMENTIN® begin expiring in the summer of 2002. The Plaintiff has applied to the Food and Drug Administration to begin producing generic AUGMENTIN® upon the expiration of the original patents. In this action, Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. §§ 2201–2 and Rule 57 of the Federal Rules of Civil Procedure, that the '552 patent and the latest patents issued covering AUGMENTIN® are invalid.

On October 31, 2001, this cause of action was joined with an action previously filed in this Court by Geneva Pharmaceuticals, Inc., against these same defendants. Subsequently, all parties have agreed to join another cause of action to this litigation, i.e. *Ranbaxy Pharmaceuticals Inc. v. Glaxosmithkline, et al.,*[3] which was filed on January 16, 2002.

### STANDARD OF REVIEW

District courts may enter summary judgment only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R.Civ. P. 56(c); *Eli Lilly and Co. v. Barr Laboratories, et al.,* 251, F.3d 955, 962 (Fed.Cir.2001); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden

---

1. This opinion views the facts and all legitimate inferences therefrom in the light most favorable to the plaintiffs as to the '552 patent and most favorable to GSK as to the '380 patent.

2. While the Geneva Pharmaceuticals matter (2:01cv391) was instituted prior to the Teva cause of action or their consolidation, the administrative and factual background of the Court's August 27 order is pertinent to the issues in this opinion and order.

3. Civil Action Number 2:01cv925.

falls on the moving party to show that there is no genuine issue of material fact. Fed. R.Civ. P. 56(c); *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979). The non-moving party who bears the burden of proof on a particular claim, however, must present evidence to support each element of his claim. *See Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This evidence must be more than a mere scintilla, and summary judgment may be granted "[i]f the evidence is merely colorable, or is not significantly probative." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505. Nonetheless, all inferences drawn from the facts must be viewed in the light most favorable to the non-moving party, with "his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him." *Charbonnages de France,* 597 F.2d at 414. When evaluating a motion for summary judgment in a patent case, the court views the record evidence through the prism of the evidentiary standard of proof that would pertain at a trial on the merits. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252–53, 106 S.Ct. 2505, 91 L.Ed.2d 202, (1986).

▆▆▆ Statutorily, a patent enjoys a presumption of validity,[4] which can only be overcome through clear and convincing evidence. *United States Surgical Corp. v. Ethicon, Inc.,* 103 F.3d 1554, 1563 (Fed. Cir.1997). Therefore, a moving party seeking to invalidate a patent "must submit clear and convincing evidence of invalidity so that no reasonable jury could find otherwise." *Eli Lilly,* 251 F.3d at 962. "Alternatively, a moving party seeking to have a patent held not invalid at summary judgment must show that the non-moving party, who bears the burden of proof at trial, failed to produce clear and convincing evidence on an essential element of a de-

fense upon which a reasonable jury could invalidate the patent." *Id.*

## TITLE 35 U.S.C. § 121

Before the Court can reach the substantive issues before it on these matters, 35 U.S.C. § 121 ("Section 121" or " § 121") must be examined. Section 121 provides in pertinent part:

> A patent issuing on an application with respect to which a requirement for restriction under this section has been made, or on an application filed as a result of such a requirement, shall not be used as a reference either in the Patent and Trademark Office or in the courts against a divisional application or against the original application or any patent issued on either of them.

In simplified terms, this section of the code shields a patent-holder from a charge of double patenting when the holder was forced by the Patent and Trademark Office ("PTO") to sever the disputed patents from a single application into multiple applications. *See Applied Materials, Inc. v. Advanced Semiconductor Materials,* 98 F.3d 1563, 1568 (Fed.Cir.1996). In her concurring opinion in *Studiengesellschaft Kohle mbH v. Northern Petrochemical Co.,* Judge Pauline Newman set out the purpose of § 121 rather succinctly by stating, "Section 121 effects a form of estoppel that shields the applicant from having to prove the correctness of the restriction requirement in order to preserve the validity of the second patent." 784 F.2d 351, 361 (Fed.Cir.1986).

## THE '552 PATENT

▆▆▆ On April 17, 1975, SmithKline Beecham Corporation, a predecessor in interest of GSK, filed a patent application[5]

---

4. 35 U.S.C.S. § 282 (2000).

5. This application was designated Serial Number 569,007.

with the PTO seeking patent protection for the combination of compounds that would eventually become the drug AUGMEN-TIN®. That application contained 35 claims related to the varying aspects of clavulanic acid and its properties and uses. In April, 1976, Examiner Richard J. Gallagher imposed a four-way restriction requirement ordering that the 35 claims in the application be submitted in multiple applications.

After Gallagher issued this restriction requirement, the claims were separated and pursued in separate applications. The claim that eventually issued as the '552 patent was included as part of the divisional application designated as Serial Number 726,480 (the '480 application). That application, too, was subject to a requirement of restriction. The claim that eventually became the '552 patent was included in a number of applications subject to restriction requirements, as the PTO ordered the claims from the '480 application further broken down over the ensuing years.

On March 5, 1979, Examiner Jerome D. Goldberg imposed the final restriction requirement leading to the '552 patent. Goldberg ordered that claims 36–105 of the claims in application Serial Number 964,-035 be separated due to his requirement of restriction. Unmistakably marked on the form issued that day, Goldberg stated that these claims were "subject to a restriction or election requirement." "Applicants are ... required to elect an invention of a single disclosed composition containing clavulanic acid and *one* penicillin or celpahosporin antibiotic for examination on the merits." GSK Cross–Mot. at Exhibit 52. From this requirement of restriction, GSK filed applications for, and was issued, the '552 patent and U.S. Patent Number 4,525,352 (the '352 patent).

Plaintiffs now come to the Court and ask it to decide the question of whether the '552 patent was obvious over the '352

patent, and therefore improperly issued. The Court, however, cannot reach that issue. As stated earlier, § 121 says, "[A]n application filed as a result of ... a [restriction] requirement, shall not be used as a reference ... in the courts against a divisional application or against the original application or any patent issued on either of them." 35 U.S.C. § 121 (Lexis 2001). Given that the Court FINDS that a restriction requirement leading to the '552 and '352 patents was imposed by the PTO, the Court must further comply with the language of § 121. As a factual matter, it does appear to the Court that these two patents are obvious over one another and therefore improperly issued as separate patents. However, it is not within the purview of the Court to so rule. Neither this Court, nor any tribunal may look under the administrative veil that Congress has placed upon a patent issued as the result of a PTO restriction requirement.

It being clear and unmistakable to this Court that the '552 and '352 patents were issued as a result of the PTO's decision to impose a restriction requirement, the Court FINDS that as a matter of law the '552 patent cannot be attacked as obvious over, and therefore invalid in light of, the '352 patent.

### THE '380 PATENT

a. *35 U.S.C. § 121's Application to the '380 Patent*

■ As with the '552 patent, the Court must first determine whether section 121 precludes consideration of the merits of the obviousness-type double patenting challenge to the '380 patent. Whereas the restriction requirements issued in relation to the '552 patent were clear and unmistakable, the proffered evidence by GSK regarding a restriction requirement in relation to the '380 patent is insufficient.

As with the claims which eventually became the '552 patent, the claims which became the '380 patent were originally included in the original patent that Examiner Gallagher ordered split in his four-way restriction requirement of April, 1976. The '380 claims, however, followed a different path than the '552 claims. GSK elected to pursue these claims in the original patent application, designated Serial Number 569,007 (the '007 application)—while severing the other claims into different applications.

At this point, GSK's evidence becomes muddled. Sometime following Examiner Gallagher's restriction requirement, the '007 application was put before another reviewer, Examiner Berch. GSK estimates that "[s]ometime between February 9, 1979 and April 12, 1979" there was an in-person interview between its representatives and Examiner Berch. GSK Cross–Mot. for Sum. Jud. at 5. GSK claims Berch issued a restriction requirement at that meeting. Teva disputes that contention, claiming the Interview Summary does not contain the formalities required to impose a restriction requirement.

It is clear to the Court that following the 1979 meeting the claims which eventually became the '380 patent were split and pursued in other applications. However, it does not appear from the evidence that the claims which eventually became the '380 patent were split because of a restriction requirement.

A logical reading of § 121 leads to the conclusion that it places the burden of producing the requisite evidence of the imposition of a restriction requirement with the party seeking to invoke the protection of that statute. That party is in the best position to proffer the strongest evidence memorializing the restriction requirement that they claim stops a pending action. If a party invoking § 121 is not successful in proving a restriction require-

ment was issued, however, the burden of proving invalidity of the patent remains with the party asserting invalidity. By invoking § 121 as an affirmative defense to the action, it is the responsibility of GSK to proffer evidence that a restriction requirement was indeed issued by the PTO.

GSK proffers an undated, one-page document, entitled "Examiner Interview Summary Record," as its principal evidence of the imposition of a restriction requirement. GSK Cross–Mot. for Sum. Jud. at Exhibit 33. The document states that it was "Agreed" that the claims that eventually were issued as the '380 patent would go into another application. Such language is insufficient to support the imposition of a restriction requirement by the PTO. The form submitted to the Court in relation to the restriction requirement that became the '552 unequivocally states, "Claims 36–105 are subject to a restriction or election requirement." Such is not the case with this undated Interview Summary. If the Examiner intended to impose a restriction requirement he could have so indicated.

The Defendants argue that after the fact language in subsequent documents establishes that a restriction requirement was imposed. However, the parties agree that if a restriction requirement was imposed it could only have been imposed at the informal conference before Examiner Berch. Even if the Court accepts the inference that GSK and the PTO both erroneously proceeded upon—that a restriction requirement had been imposed—such conduct cannot alter or enlarge the language summarizing the informal conference.

The imposition of a restriction requirement has important consequences. An invention could potentially receive serial patent protection as a result of such imposition, and thereby obtain a more lengthy statutory period of protection than that intended by law. Under the system con-

templated by Article I, § 8, cl. 8 of the United States Constitution[6], and further spelled out by Congress in Title 35 of the United States Code, inventors are rewarded with a limited period of exclusive right to their innovations, then they must turn that invention over to the normal processes of open competition.

The PTO's own *Manual of Patent Examining Procedure* (MPEP)[7] warns its examiners that it is "very important that the practice [of issuing restriction requirements] under this section be *carefully administered*." MPEP § 803.01 (8th Ed.2001) (emphasis added).[8] If an examiner is communicating that a restriction requirement is being issued, it should be clearly communicated, as opposed to standing upon an inference which could be drawn from post issuance patent history. If the owner of a patent were permitted to base the existence of a restriction requirement upon the tenuous evidence proffered

by GSK, the door to abuse would be widely opened; an inventor could divide applications at a whim, thereby using a restriction requirement as a sword instead of a shield.

Accordingly, the Court FINDS that GSK has proffered insufficient evidence to support a fact finder's conclusion that a restriction requirement was issued by the PTO. Therefore, § 121 does not bar the Court from deciding whether the '380 patent is invalid due to double patenting over U.S. Patent Number 4, 529,720 (the '720 patent).

b. *Obviousness–Type Double Patenting*

 The Court must now move to the underlying issue of whether the '380 patent is invalid due to obviousness-type double patenting. By statute, Congress has limited the duration a patent holder may lay exclusive claim to an invention before it falls into the public domain.[9] "The judi-

---

**6.** Article I, § 8, cl. 8 of the United States Constitution specifically states, "[Congress shall have the power t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."

**7.** The Manual of Patent Examining Procedure sets out the published rules that both examiners and applicants must follow during the patent application process. While it does not carry the binding force of law, it has been held that a reviewing court may take notice of its provisions because it is the official interpretation of the PTO's governing set of regulations and statutes. *Litton Systems Inc. v. Whirlpool Corp 728 F.2d 1423 (Fed.Cir.1984); see also Application of Kaghan*, 55 C.C.P.A. 844, 387 F.2d 398 (Cust. & Pat.App.1967).

**8.** *Manual of Patent Examining Procedure*
 Chapter 800 Restriction In Applications Filed Under 35 U.S.C. 111; Double Patenting
 Since requirements for restriction under 35 U.S.C. 121 are discretionary with the Commissioner, it becomes very important that

the practice under this section be carefully administered. Notwithstanding the fact that this section of the statute apparently protects the applicant against the dangers that previously might have resulted from compliance with an improper requirement for restriction, IT STILL REMAINS IMPORTANT FROM THE STANDPOINT OF THE PUBLIC INTEREST THAT NO REQUIREMENTS BE MADE WHICH MIGHT RESULT IN THE ISSUANCE OF TWO PATENTS FOR THE SAME INVENTION. Therefore, to guard against this possibility, only an examiner with permanent or temporary full signatory authority may sign final and non-final Office actions containing a final requirement for restriction, except that an examiner with permanent or temporary partial signatory authority may sign non-final Office actions containing a final requirement for restriction. (Emphasis original.)

**9.** 35 U.S.C. 154(a)(2) (1994). A patent holder has twenty years of exclusivity before the public is allowed to copy the invention for profit. When the patents being considered today were issued, the statutory period of exclusivity was seventeen years.

cially-created doctrine of obviousness-type double patenting cements that legislative limitation by prohibiting a party from obtaining an extension of the right to exclude through claims in a later patent that are not patently distinct from claims in a commonly owned patent." *Eli Lilly*, 251 F.3d at at 967. Obviousness-type double patenting is a question of law for a court to decide. *In re Berg*, 140 F.3d 1428, 1432 (Fed.Cir.1998); *General Foods v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272, 1277 (Fed.Cir.1992); *In re Goodman*, 11 F.3d 1046, 1052 (Fed.Cir.1993).

■ When conducting an obviousness-type double patenting review, a court should conduct a two step analysis. *Eli Lilly*, 251 F.3d at 968. First, the court construes the claims in the patents at issue to determine the differences between the two. *Id.*; *Georgia–Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322 (Fed. Cir.1999). Next, a court must determine whether the differences in subject matter between the two are sufficient to render the two patentably distinct. *Id.* Only if the later claim is not patentably distinct from the earlier claim is the commonly owned patent to be ruled invalid due to obviousness-type double patenting. *Id.*

■ A later patent claim is not patently distinct from an earlier claim if the later claim is obvious over, inevitable in light of or anticipated by the earlier claim. *Id.* A reference is obvious over, or anticipated by an earlier claim if it discloses every limitation of the claimed invention either explicitly or inherently. *Id.* at 970. "A reference includes an inherent characteristic if that characteristic is the 'natural result' flowing from the reference's explicitly explicated limitations". *Id.*; *see also Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1269 (Fed.Cir. 1991). If the later claim is anticipated by

the earlier claim, there can be no patentable distinction, as a matter of law. *Eli Lilly*, 251 F.3d at 970. To state it more simply, in order to receive patent protection the newly claimed invention must be novel and distinct from *all* previously claimed patented inventions the holder owns. *Id.*; *see also General Foods*, 972 F.2d at 1279.

The Court has carefully reviewed the claims of the two patents at issue, and found them to be strikingly similar. For example, claim one of the '720 patent reads:

1. A method of effectingβ-lactamase inhibition in a human or animal in need thereof arising from a β-lactamase producing bacteria which comprises administering to said human or animal a β-lactamase inhibitory amount of clavulanic acid or a pharmaceutically acceptable salt thereof.[10]

Claim one of the '380 patents is a near perfect reflection of that claim:

1. A pharmaceutical composition useful for effecting β-lactamase inhibition in humans and animals which compromises β-lactamase inhibitory amount of clavulanic acid in combination with a pharmaceutically acceptable carrier.[11]

As one reads each claim in these two patents, the similarities are obvious and continuous. What we have in the '380 patent appears to be either a rewording of the '720 patent or an obvious by-product of something already included in that earlier patent. Often the difference appears to be that "Pharmaceutical composition" is substituted for "method," and submitted as a new invention for patent protection. As the Federal Circuit has stated, "We do not agree that there is a patentable distinction

---

**10.** '720 patent, column 40, lines 12–18.

**11.** '380 patent, column 40, lines 20–24.

between the method of using the device and the device itself." *In re Lonardo*, 119 F.3d 960, 968 (Fed.Cir.1997).

Therefore, Court FINDS by clear and convincing evidence that the differences between these two patents are not patentably distinct. Accordingly, the Court FINDS that the '380 patent is invalid on the ground of obviousness-type double patenting.

### CONCLUSION

Section 121 precludes judicial review of a patent's validity for double patenting when a restriction requirement was properly issued. There being clear evidence that a restriction requirement was issued and led to the '552 patent's issuance, the Court GRANTS GSK's motion for partial summary judgement in reference to the '552 patent.

Given that the Court has found that there was no restriction requirement issued regarding the '380 patent, it is available for review under an obviousness-type double patenting theory. Having construed the differences, the Court FINDS by clear and convincing evidence that the '380 patent and the '720 patent are not patentably distinct. Accordingly, the Court FINDS that the '380 patent is invalid on the ground of obviousness-type double patenting, and GRANTS Teva's motion for partial summary judgment in reference to the '380 patent.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record.

It is so **ORDERED.**