**VECTRA FITNESS, INC., a Washington corporation, Plaintiff,**

v.

**ICON HEALTH & FITNESS, INC., a Delaware corporation; and Sears Roebuck and Company, a New York corporation Defendants.**

**Icon Health & Fitness, Inc., a Delaware corporation, Counterclaimant,**

v.

**Vectra Fitness, Inc., a Washington corporation, Counterclaim Defendant.**

**No. C02–635R.**

United States District Court, W.D. Washington, at Seattle.

July 3, 2003.

---

Paul T. Meiklejohn, Brian C. Park, Dorsey & Whitney, LLP, Seattle, WA, for Plaintiff.

Larry R. Laycock, Charles Roberts, David Griffin, Workman, Nydegger & Seeley, Salt Lake City, UT, for Icon Health & Fitness, Inc.

## ORDER DENYING DEFENDANTS' SECOND AND THIRD MOTIONS FOR SUMMARY JUDGMENT OF NON–INFRINGEMENT AND GRANTING PLAINTIFF'S CROSS MOTIONS FOR SUMMARY JUDGMENT

ROTHSTEIN, District Judge.

BEFORE the court are two cross-motions for summary judgment. Defendants ICON Health and Fitness, Inc. ("Icon") and Sears, Roebuck and Company have a filed a second motion for summary judgment of noninfringement, arguing *inter alia* that its product, the WeiderPro 9950, does not infringe claim 26 of U.S. Patent No. Re. 34,572 (the "572 patent"). In its third motion for summary judgment of noninfringement, Icon argues that none of its accused products infringe claims 7, 25, and 26 of the '572 patent. Plaintiff Vectra Fitness Inc. ("Vectra") opposes these motions and cross-moves for summary judgment of literal infringement.

On June 12, 2003, the court held a hearing, at which the parties submitted oral presentations as well as demonstrative exhibits that have aided the court in its adjudication of these cross motions. Having now reviewed the documents filed in support of and in opposition to these motions, and having considered the counsels' oral arguments, the court finds and rules as follows:

## I. BACKGROUND

In its February 14, 2003 Order (referred to herein as "Order"), the court considered the parties' earlier cross-motions for summary judgment and concluded that Icon's WeiderPro 9930 literally infringes claims 25 and 26 of the '572 patent and that the WeiderPro 9940 literally infringes claim 26.

In the Order, the court described the '572 patent as follows:

> The '572 patent is directed to exercise machines having multiple exercise stations yet only a single weight stack. The exercise stations are coupled to the weight stack by a cable and pulley system that enables a user to switch from one exercise station to another exercise station without requiring the user to disconnect and reconnect various cables leading to the various exercise stations. Thus, a single weight stack can be used

with multiple exercise stations while requiring no user adjustment of the connection between the weight stack and the exercise station.

Order at 2.

## II. DISCUSSION

### A. Summary Judgment Standard

"[S]ummary judgment is as appropriate in a patent case as in any other." [1] *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.,* 853 F.2d 1557, 1561 (Fed.Cir.1988). That is, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

### B. Second Motion for Summary Judgment

Icon's second motion for summary judgment implicates claims 7, 26, and 27 of the '572 patent. Vectra subsequently withdrew all of its allegations as to claim 27 and as between the WeiderPro 9930 and claim 7. Consequently, the only issues remaining in this motion relate to claim 26 and the WeiderPro 9950 and claim construction of certain elements of claim 7. [2]

### 1. Claim 26 and the WeiderPro 9950

■ Claim 26 recites in relevant part "stops on said three cables whereby a manual exercising force applied [to one of the cables associated with the exercise unit in use] responsively tensions said first cable and applies a force tending to move

said load." '572 patent col. 12, lns. 13–19. Icon argues that the WeiderPro 9950 does not have all the required "stops." Alternatively, Icon argues that, even if the WeiderPro 9950 does have all the required stops, it does not have stops "on" their respective cables as required by claim 26.

Icon acknowledges, however, that the "the issues relevant to Vectra's allegation that the WeiderPro 9950 infringes claim 26 have, in general, already been decided adverse to Icon in the court's February 14, 2003 Order." Reply Br. at 1. In its Order, the court construed the term "stop," as used in claim 25, to encompass " 'mechanical'-type structures that are associated with the exercise unites that abut an adjacent structure when a cable is pulled to stop the movement of the cable end and to allow the cable to be tensioned." Order at 8. The same claim construction applies to the term "stop" as used in claim 26. *See Georgia–Pac. Corp. v. U.S. Gypsum Co.,* 195 F.3d 1322, 1331 (Fed.Cir.1999) ("[A] claim term cannot be given a different meaning in the various claims of the same patent.").

The court has already found that the "stops associated with the butterfly units [of the WeiderPro 9930 and 9940] ... satisfy claim 26's stops limitation and therefore literally infringe claim 26." Order at 14. Inasmuch as the WeiderPro 9950 comprises essentially the same mechanical structure, function, and operation as the WeiderPro 9940, it follows that the WeiderPro 9950 also satisfies claim 26's stops recitation.

---

1. In its prior Order, the court set forth the applicable canons of construction, *see* Order at 4–6, which section is incorporated herein by reference.

2. As to claim 7, Vectra only withdrew its infringement assertion against the WeiderPro

9930, the accused device discussed in the second motion for summary judgment. Vectra now accuses Icon's WeiderPro 8630 of infringing claim 7. Vectra has also accused several other Icon products of infringing claim 7, which accusations Icon denies. *See* Icon's Third Mot. at 6, ¶¶ 12, 13.

### 2. *Claim 7 Construction*

Although Vectra withdrew its allegations as to claim 7 and the WeiderPro 9930, Vectra now accuses another Icon product, the WeiderPro 8630, of infringing claim 7. Vectra first raised this infringement allegation shortly before the June 12, 2003 hearing, and the issue of literal infringement/noninfringement of the WeiderPro 8630 has not been brought before the court. Although the accused products have changed, the disputed language in the claim remains virtually the same. The parties have therefore requested that the court construe the following three claim elements: (1) what constitutes the "outer end" of the first reach arm; and two elements found in claim 7's means-plus-function: (2) what it means that the first cable be guided "*along* said first reach arm and down to said first floating pulley" (3) "*up to* said second reach arm *from* said first floating pulley, and along said second reach arm to said first exercise unit." '572 patent, col. 8, lns. 3–8.

> a. *Weight stack "positioned beneath the outer end of said first reach arm"*

■ Claim 7 requires that the weight stack located on the base support be "positioned beneath the outer end of said first reach arm." [3] '572 patent, col. 7, lns. 62–63. Icon construes the phrase "outer end" as meaning something akin to the "outer edge" or "tip" of the reach arm. Thus, Icon argues, unless a weight stack is positioned beneath the "outer end" of the structure Vectra identifies as the first reach arm, the accused device does not literally infringe the patent.

At first glance, Icon's position seems well-founded. In the WeiderPro 8630, for instance, the weight stack is positioned beneath what appears to be the middle of the structure Vectra characterizes as the "first reach arm." Vectra, of course, disagrees, but for reasons that are independent of the meaning of the term "outer end." [4] Rather, Vectra disagrees with Icon's view of what should be considered the end of the reach arm. That is, in Vectra's view, if the reach arm is "cut off" at a certain point, the weight stack is indeed positioned beneath its outer end, or "tip." Vectra assumes, in other words, that additional or extra material on the reach arm—which, in the WeiderPro 8630, extends to provide the support for another weight stack and exercise unit—is not relevant for purposes of determining its "outer end." As the patent holder, Vectra argues, it may define on Icon's products the structures that correspond to the claim

---

**3.** Claim 7 recites "first and second reach arms projecting" from "a column mounted on said base support." '572 patent, col. 7, lns. 55–57. In the briefs, the parties disagree as to whether Icon's product, the WeiderPro 9930, has the "first and second reach arms" required by claim 7. That dispute centered on whether the accused product's "Y-shaped projection" constitutes the "first reach arm," within the meaning of the patent. It appears that, to the extent that Vectra no longer accuses that product, the issue of what constitutes "first and second reach arms" is no longer disputed, at least with respect to the WeiderPro 8630. Instead, Icon's argument seems primarily to be that, as to the WeiderPro 8630, the reach arm Vectra identifies as the first reach arm does not have a weight stack positioned beneath its "outer end" and therefore the claim language is not met. This issue is discussed above.

**4.** Inasmuch as the parties do not disagree over the meaning of "outer end," it would appear that this is not so much a claim construction issue as it is a question of whether this element "reads on" the accused device. Such a determination, however, turns on whether Vectra's manner of identifying the "outer end" of the accused device's reach arm—that is, by ignoring the extra material on the structure—is sound. The court therefore addresses that legal issue above.

elements. To that end, Vectra maintains that the court need only consider *part* of the reach arm in determining its "outer end." For its part, Icon believes the whole structure must be considered the "first reach arm."

Vectra's position finds support in caselaw. Numerous decisions indicate that addition of an element or step to an accused product cannot avoid infringement. *See, e.g., Vulcan Eng'g Co., Inc. v. Fata Aluminium, Inc.,* 278 F.3d 1366, 1375–76 (Fed.Cir.2002) ("[W]hen all of the claimed features are present in the accused system, the use of additional features does not avoid infringement."); *Amstar Corp. v. Envirotech Corp.,* 730 F.2d 1476, 1482 (Fed.Cir.1984) ("Modification by mere addition of elements or functions, whenever made, cannot negate infringement without disregard of the long-established, hornbook law ..."); *A.B. Dick Co. v. Burroughs Corp.,* 713 F.2d 700, 703 (Fed.Cir. 1983) ("It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device ....").

The court finds, therefore, that, to the extent Icon's accused products have "first and second reach arms," beneath which first reach arm there is a weight stack, as required by claim 7, Vectra may define the length of the first reach arm, such that the weight stack is beneath its outer end. In other words, consistent with Federal Circuit law, the addition of a weight stack and/or exercise unit on the reach arm, does not alone preclude a finding that this requirement of claim 7 is satisfied.

b. *"Guide Means on Said Reach Arms"*

Claim 7 recites the following "means-plus-function" element:

> guide means on said reach arms for guiding said first cable from said weight to the outer end of said first reach arm, along said first reach arm and down to said first floating pulley, up to said second reach arm from said first floating pulley, and along said second reach arm to said first exercise unit.

'572 patent, col. 8, lns. 3–8. Because this limitation recites means for performing a specified function, it is a "means-plus-function" limitation governed by 35 U.S.C. § 112, ¶ 6:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

The function performed by the guide means has four specific requirements: "guiding said first cable (1) from said weight to the outer end of said first reach arm, (2) along said first reach arm and down to said first floating pulley, (3) up to said second reach arm from said first floating pulley, and (4) along said second reach arm to said first exercise unit." '572 patent, col. 8, lns. 3–8.

The key construction disputes with respect to this element of claim 7 are (1) what it means that the cable goes "*along* said first reach"; and (2) whether the cable must follow a direct path "up to said second reach arm from said first floating pulley." [5]

**5.** A related issue Icon raises with respect to this element of claim 7 is the requirement that the first cable be guided "from said weight to the outer end of said first reach arm." Icon argues that in none of its accused products does the first cable go to the "outer end" of the reach arm. This issue is disposed of by the preceding discussion of what constitutes the "outer end" of the reach arms on the accused products.

i. *"along said first reach arm"*

■ Claim 7 recites "guide means on said reach arms for guiding said first cable from said weight to the outer end of said first reach arm, *along* said first reach arm." Icon argues that claim 7 requires that the "direction of [the reach arms'] projection defines an axis 'along' which the cable is guided by the guide means." Opp'n at 6. Vectra disagrees that there is a requirement in claim 7 that the cable must be guided "along" some "appreciable distance" on the first reach arm.

The purpose of this claim element is clear and sheds light on the term "along." For the exercise machine to operate, there must be a separation between the vertical plane of the weight stack and the vertical plane of the floating pulley unit. This function is accomplished by having the cable travel "along" the reach arm to provide that separation. In Icon's products, this function is accomplished by the cable traveling "along" the first reach arm for a distance equal to the diameter of the pulley. In the court's view, this is all that is required. There is no requirement in the claim, as Icon argues, that the first cable "must travel and be guided some appreciable distance" along the length of the first reach arm. Opp'n at 6. Nor is there an additional limitation that "the cable travel[ ] in a line parallel with the length or direction of the linear arm on which the pulley is mounted." [6] *Id.* at 7.

In sum, the court concludes that a cable travels "along" the first reach arm, within the meaning of the claim, if, as in the WeiderPro 8630, the cable goes through the pulley that is connected to the first reach arm, such that the cable is "guided" down to the "first floating pulleys" on a different vertical plane than the weight stack.

ii. *First cable guided "up to said second reach arm from said first floating pulley."*

■ Claim 7 requires that the first cable go *from* the first reach arm down to a floating pulley and then up *to* a second reach arm "from said first floating pulley ..." '572 patent at 8, lns. 6–7.

■ Icon reads the word "from" to limit claim 7 to a direct path between the floating pulley and the second reach arm. The claim, however, only requires that the cable travel *from* the pulley to the second reach arm. The first floating pulley serves as the starting point for the cable's journey along the first reach arm to the second reach arm. And on the WeiderPro 8630, that journey is fairly direct: once the cable goes upward from the first floating pulley, the cable intersects the first reach arm for a short distance before passing through the pulley on the second reach arm and then continuing on along that reach arm. That the cable's path upward briefly intersects the first reach arm before traveling along the second reach arm does not mean that the cable is not guided "up to said second reach arm from said first floating pulley."

C. *Third Motion for Summary Judgment*

Icon's third motion for summary judgment of noninfringement focuses on specific claim construction issues that have not been implicated by the earlier motions. This includes (1) language in claim 26 related to the term "receiving;" (2) claim 25's requirement that "a second cable passes over a third floating pulley;" (3) language

---

**6.** The court recognizes that Figure 1 in the patent shows two pulleys guiding the cable "along" the reach arm. Because of the use of two pulleys, the cable goes on a straight line along the first reach arm. As noted above, however, nothing in the claim requires that the cable go parallel "along" the reach arm.

from claims 25 and 26 related to the requirement that a specific cable be "connected at one of its ends" to an exercise unit; and (4) the requirement in claim 5 that the cable be "connected at one of its ends to a stop."[7]

### 1. *"Receiving" and claim 26*

■ Claim 26 requires, *inter alia*, "a first cable receiving said floating pulley units and said load and connected to said first exercise unit such that a force exerted on either one of said floating pulley units or on said first exercise unit responsively tensions said first cable and is resisted by said load." '572 patent, col. 12, lns. 1–6. The court has already found that the term "receiving" in claim 26 is functionally defined by language within the claim providing "that a force exerted on either one of said floating pulley units or on said first exercise unit responsively tensions said first cable and is resisted by said load," leading to the result that the cable is received by the pulley. Order at 13.

Here, Icon argues that the term "receiving" should "require the first cable to directly contact by holding or fitting into not only the two floating pulley units but also the load." Mot. at 14. In other words, Icon presents the issue as whether "receiving the load" should be construed differently than "receiving" the two floating pulley units, a term addressed in the Feb-

ruary Order. Because, in Icon's view, the term "receiving" should be construed as requiring direct physical contact or attachment, Icon argues that claim 26 is not infringed by the Image 6.5 or ProForm 875. Additionally, Icon states that Vectra's allegation based on claim 26 fails because the cable identified by Vectra's expert cannot qualify as a "first cable" because it does not "receive" or "hold" the load.

Icon's argument is, in essence, a request for reconsideration of the February Order. In the context of the same element of claim 26, the court has already determined that "the term 'first cable receiving said floating pulley units does not require that both floating pulley units be in direct physical contact with the first cable.'" Order at 12. There is no basis for defining that term differently for purposes of "receiving said floating pulley units" and "receiving said load" as recited in claim 26.[8]

To the extent that Icon's sole basis for arguing noninfringement is predicated on its previously rejected interpretation of the term "receiving," the accused products, the Image 6.5 and ProForm 875, satisfy all of the elements of claim 26, thereby literally infringing the '572 patent.

### 2. *"Floating" pulleys and claim 25*

■ Claim 25 recites "a second cable passing over said third floating pul-

---

7. Approximately 9 of Icon's products are implicated by these allegations. Vectra has provided a table on page 2 of its opposition brief, listing which of Icon's products allegedly infringes either claim 5, 25, or 26 of the '572 patent.

8. In Icon's view, the term "receiving" is equated with the narrower specification term "hold." To that end, Icon points to the Random House Webster's College Dictionary, which defines ("to receive" as meaning "to hold: *the socket receives the plug*."). While "hold" may be among the possible embodiments of the word "receive," the patent drafter did not use the word "hold" in the claim element and there is no reason to import the term "hold" into the language of the claims. Icon also points to three instances in the patent specification in which it asserts that the term "receive" was used to mean "hold." Icon argues that these three instances of the term "receive" constitute a "consistent use," triggering a "definition by implication." *Bell Atl. Network Servs., Inc. v. Covad Comm. Group, Inc.*, 262 F.3d 1258 (Fed.Cir.2001). Icon's attempt to import this claim limitation is without basis. None of the three excerpts on which Icon relies involves a cable "receiving" a pulley in the way that Icon proposes.

ley." '572 patent, col. 11, ln. 50. Icon believes that its products do not infringe claim 25 because the "second cable" does not pass over any "third *floating* pulley."[9] Icon states that its products have no "third floating pulley"—that is, no third pulley "suspended in the air" through the use of two separate cables. "Rather the second cable passes over a pulley which is permanently mounted to a moveable arm or lever pivotally attached to the frame." Reply Br. at 11.

Icon's proposed limitation for what constitutes a "floating" pulley is without basis. There is *nothing* in the claims that requires a "floating pulley" be "suspended in the air." "Floating," as Vectra points out, means that the spatial position of the pulley is not fixed and is not limited by any requirement about the manner in which it moves. Indeed, there are only two types of pulleys found in the patent: those pulleys whose spatial position is fixed and those pulleys whose spacial position is not fixed. To conclude otherwise would leave the determination of whether a pulley was "floating" or "fixed" solely on whether it was suspended by cables. But whether a pulley is suspended by cables, suspended by a metal bar, or, as in the case of Icon's products, attached to a movable arm, the pulley functions the same. That is, the pulley would still move in unison with the pivot arm, unable to change its connection with that structure. In sum, the court concludes that "floating pulleys" in the '572

patent are those pulleys whose spatial position is not fixed.

Applying this claim construction, the WeiderPro 9925, which has a pulley directly connected to the pivot arm that moves up and down with the movement of that pivot arm, satisfies this claim element.

3. *"connected at one of its ends to said second exercise unit" and claim 26*

■ Claim 26, in relevant part, requires "a second cable carried by said first floating pulley unit and *connected at one of its ends* to said second exercise unit." Icon argues that this claim element is lacking in the accused products, arguing that "the 'second cable' (which is the cable which passes over the pulleys associated with exercise units 5 and 6) is not physically linked to exercise unit 5 or 6 at its tip ('end')." Mot. at 18.[10] Vectra, for its part, believes that Icon misses the mark in limiting the term "exercise unit" to include only that part of the exercise unit that is moved during exercise. Thus, the dispute is not what constitutes the "end" of the cable, but, rather, what constitutes the exercise "unit."[11] Figure 2 of the '572 patent is instructive on what it means that a cable be connected at its end to its respective exercise unit. *See Pandrol USA. LP v. Airboss Ry. Prods., Inc.,* 320 F.3d 1354 (Fed.Cir.2003) (stating that patent claims must be read in view of the specification, of which they are a part and that this includes consulting the preferred embodiment and the abstract); *Magnesystems*

9. Vectra accuses the WeiderPro 9925 of infringing claim 25. Initially, Vectra alleged that the WeiderPro 9925 and the Lifestyler 300 products infringed both claims 25 and 14. In a June 10, 2003 letter to the court, Vectra withdrew all allegations with respect to claim 14 and the Lifestyler 300.

10. Vectra alleges that claim 26 is infringed by the WeiderPro 9735, Image 5.0 Single Stack, Image 5.0 Double Stack and ProForm 920 products.

11. At the June 12, 2003 hearing, the disputed claim language was discussed in the context of claim 5, which requires in relevant part a "a third cable ... connected at one of its ends to said third exercise unit." '572 patent, col. 7, lns. 20–21. The court's foregoing discussion is based on the language in claim 26, as argued in the briefs, but the court's construction applies equally to the related language in claim 5.

*Inc. v. Nikken Inc.*, 34 U.S.P.Q.2d 1112, 1116 (C.D.Cal.1994) ("A patent may contain drawings. Where it does, a visual representation can 'flesh out words,' aiding the court in claim interpretation."). In that figure, cable 19 is "connected at its end" to a "butterfly" exercise unit. The figure shows, however, that the very *tip* of the cable is connected to a pulley, through which the cable for the butterfly exercise unit passes. Thus, the exercise "unit" is characterized as more than simply the part of the unit that is moved by the user during exercise. Otherwise, the "end" of cable 19 in the preferred embodiment would not be connected to an exercise unit, but, instead, only a pulley.

Icon's argument collapses in light of this construction. Icon contends that, inasmuch as the second cable in the accused product is connected to the vertical support of the leg press unit (on top of which is the seat), the cable is not connected at its end to the exercise unit. Icon's proposed limitation, however, does not comport with the patent's preferred embodiment. If a cable is connected at its "end" when it terminates at the pulley attached to the exercise unit (as in Figure 2), it follows that the cable in the WeiderPro 9735 is connected at its end to the exercise unit when connected to the seat for the leg press unit. The seat, in other words, must be considered part of the exercise "unit." Aside from what the preferred embodiment teaches, because the exercise unit in question is a leg press, common sense dictates that the seat to that device be considered part of the exercise unit.

Thus, inasmuch as the second cable in the WeiderPro 9735 is connected to this seat frame for the leg press unit, this claim element is satisfied.[12]

4. *"connected at its other end to a Stop" and claim 5*

■ Finally, Vectra asserts that the ProForm 920 CT (and related products) infringes claim 5, which requires a system with three cables and three exercise units.[13] The last clause of claim 5 requires a "third cable connected at one of its ends to said third exercise unit and *connected at its other end to a stop.*" '572 patent, col. 7, lns. 19–22. The construction issue with respect to this claim language is what it means for the cable to be connected at its "end." Icon believes that "end" should be construed to mean "termination point," or "tip." Unless the cable is connected to the stop at its "tip," Icon argues, the accused products do not infringe this element of claim 5.

Icon's construction of the term "end" is untenable. The patent does not require that the cable be connected at its "tip" or "point of termination." The patent refers to one "end" of the cable being connected to an exercise unit and the other "end" being connected to a stop. The patent does not imply that "end" means "tip." Instead, the patent refers to one end versus the other end of the cable.

In the accused products, the relevant cable is attached to a stop at its "end," even though the cable continues on past the stop for a short distance.[14] This claim

---

**12.** At the June 12, 2003 hearing, Icon dropped its request for summary judgment with respect to the Image 5.0 Double Stack and the Proform 920, conceding that the relevant cables do attach to their respective exercise units.

**13.** The related products are the Image 5.0 Single Stack, the Image 5.0 Double Stack,

Image 8.0, ProForm 960, and WeiderPro 9600.

**14.** Icon again takes issue with what structures may be considered "stops." The last clause of claim 5 requires "stops for said exercise units whereby a manual exercising force applied either . . . to said second cable by use of said second exercise unit, or to said third cable by use of said third exercise unit, ap-

element, therefore, reads on the accused devices.

### III. CONCLUSION

For the foregoing reasons, defendants' second and third motions for summary judgment of noninfringement [doc. nos. 64-1, 84-1] are DENIED, and plaintiff's second and third cross motions for summary judgment of literal infringement [doc. nos. 80-2, 106-1] are GRANTED.

plies a like force to said load and to all of said stops except the stop for the exercise unit in use." The court has already interpreted similar language in connection with claim 25 to mean that "a manual exercising force applied to the first, second, [or] third exercise units applies a force to the load and to all of the stops except for the stop associated with the exercise unit in use." Order at 9. The court also noted that "stops" can mean " 'mechanical'-type structures ... that abut an adjacent structure when a cable is pulled to stop the movement of the cable end and to allow the cable to be tensioned." Id. at 8.

The "stop" structure of the accused products, Icon argues, is the "angle iron bracket" connected at each arm of the butterfly unit.

These structures, Icon contends, are under force from the user when the butterfly exercise unit is in use, and thus this structure cannot satisfy the "no force on the stop of the exercise unit when it is in use" requirement of claim 5.

Icon's argument is foreclosed by the court's earlier construction of the term "stops." When the angle iron is static, it is a mechanical structure that abuts structure and functions as a stop. When it is moving, the angle iron is a mechanical structure transferring force from the user to the load. The cables on the accused products are thus connected to a "stop" when connected to these angle iron brackets.