AMERICAN MEDICAL SYSTEMS,
INC. and Laserscope, Inc.,
Plaintiffs

v.

BIOLITEC, INC., et al., Defendants.

Civil Action No. 08–30061–MAP.

United States District Court,
D. Massachusetts.

Oct. 28, 2009.

Edward A. Mas, II, Jonathan M. Rushman, Leland G. Hansen, Ronald H. Spuhler, Scott P. McBride, McAndrews, Held & Malloy, Ltd., Chicago, IL, Ernest V. Linek, Banner & Witcoff, Ltd., Boston, MA, for Plaintiffs.

David M. Ianelli, McCarter & English, LLP, Boston, MA, Eric E. Grondahl, James F. Dedonato, Mark D. Giarratana,

McCarter & English, LLP, Francis H. Morrison, III, Axinn Veltrop & Harkrider, Hartford, CT, James P. Doyle, Axinn, Veltrop & Harkrider LLP, New York, NY, for Defendants.

### *MEMORANDUM AND ORDER REGARDING CONSTRUCTION OF PATENT CLAIMS*

PONSOR, District Judge.

## I. *INTRODUCTION*

Plaintiffs American Medical Systems, Inc. ("AMS") and Laserscope, Inc. brought suit against Defendant Biolitec, Inc. ("Biolitec") and related companies on March 21, 2008, alleging infringement of U.S. Patent No. 5,428,699 (issued June 27, 1995) ("the '699 Patent"). (Dkt. No. 1.) The parties have submitted briefs on the construction of the patent claims, and the task before the court now is to "determin[e] the meaning and scope of the patent claims asserted to be infringed." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir.1995).

## II. *BACKGROUND*

Generally, the '699 Patent describes a side-firing laser probe that delivers laser energy to prostate tissue to vaporize or ablate it and to reduce the size of the organ. This procedure is useful in the treatment of Benign Prostatic Hyperplasia, a condition in which an enlarged prostate compromises functioning of the bladder and urethra. Vaporization, or ablation, of some of the prostate tissue allows reduction of the prostate to a more comfortable size.

The side-firing laser system utilizes a laser probe that consists, principally, of a fiber-optic core surrounded by a cladding or sheath, which may or may not be surrounded by other layers of material. Laser light travels along the fiber core before reflecting off a surface at an angle such that 90% of the laser energy or more passes through a particular area on the transmitting surface and ultimately hits the prostate tissue. The cladding has a lower index of refraction than the fiber core to ensure that the laser light is internally reflected back into the fiber and does not "leak" before it is reflected onto the prostate tissue. Plaintiffs contend that Defendants' device infringes the '699 Patent.

A typical claim of Plaintiffs' patent describes:

> An apparatus for communicating and laterally directing electromagnetic radiation, comprising: a waveguide having a tip for communicating electromagnetic radiation in a propagation direction to the tip of the waveguide; a transmitting surface on the tip of the waveguide; a reflecting surface on the tip of the waveguide for internally reflecting electromagnetic radiation communicated by the waveguide in a direction lateral to the propagation direction toward a particular area on the transmitting surface; and wherein the particular area and the reflecting surface are disposed so that greater than about 90% of the electromagnetic radiation reflected by the reflecting surface is incident on the particular area at below a critical angle for transmission through the transmitting surface in the lateral direction.

The '699 Patent, col. 14, lines 48–64.

Other independent claims cite variations on this method, or particular ways of accomplishing the desired results. The dependent claims add details such as the shape of the tip or parameters of the waveguide.

## III. *CLAIM CONSTRUCTION*

To analyze Plaintiffs' claims, the court must determine, preliminarily, "the meaning and scope of the patent claims asserted to be infringed." *Markman*, 52 F.3d at

976. In this case, Plaintiffs assert infringement of Claims 1–2, 4–5, 7–9, 16, 21–23, 25–26, 30, and 33. Of these, Claims 1, 5, 7, and 25 are independent claims. The rest are dependent.

■■■ The court's interpretation of the patent claims must be based on the meaning they would have to "a person of ordinary skill in the art at the time of the invention." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed.Cir.2004). When construing patent claims, "the court should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996).

The parties have stipulated to the constructions, which will not be recited at length by the court, of the following ten claim terms:

(1) "propagation direction/propagation directions" (Independent Claims 1, 7; Dependent Claims 5, 9);

(2) "first propagation direction" (Independent Claim 25);

(3) "second propagation direction" (Independent Claim 25);

(4) "lateral";

(5) "critical angle";

(6) "a particular area on the transmitting surface";

(7) "comprising";

(8) "waveguide";

(9) "segment"/"portion"; and

(10) "core".

The parties have been unable to agree on the interpretations of certain other words and phrases in the patent. Set forth below is the court's construction of the disputed terms appearing in particular patent claims.[1]

A. *"Transmitting Surface" (Independent Claims 1, 7, and 25)*

■■■ The court finds "transmitting surface" to mean "surface through which electromagnetic radiation is transmitted in the lateral direction."

The primary dispute between the parties over this term relates to the location of the transmitting surface. Defendants urge a construction that locates the "transmitting surface" on the outer surface of a round core cladding on the waveguide. They point to figures included in the patent (the '699 Patent Figs. 1–4 and 9) that show a transmitting surface located on the outside of the cladding but beneath any glass cap or transparent adhesive or other materials that lie on the outside of the cladding.

■■■ Defendants' limiting construction must be rejected because it would exclude an embodiment of the patent. A definition that excludes an embodiment of the patent is unlikely to be correct or "would require highly persuasive evidentiary support." *Vitronics*, 90 F.3d at 1583. The '699 Patent describes an embodiment of the patent in which a "transparent tube" is attached to the tip of the probe with adhesive. In Figure 12, the "transmitting surface" is located on the external surface of the transparent tube and not simply on the outside of the core cladding. Because this embodiment of the '699 Patent describes a transmitting surface located elsewhere than on the core cladding, Defendants' proposed definition is too restrictive.[2]

---

1. The court has been assisted in rendering these constructions by the excellent memorandum of Judge Joan N. Ericksen of the District of Minnesota, who has construed a number of the same terms in the same patent. *See, American Medical Systems v. Laser Pe-* ripherals, *LLC,* 665 F.Supp.2d 1025 (D.Minn. 2009).

2. This court's construction of the term "transmitting surface," though worded somewhat differently, is in line with Judge Ericksen's, in

**B.** *"Cladding" or "Core Cladding/Glass Cladding" (Independent Claim 5; Dependent Claims 2, 4, 21, 23, 26, 33)*

The court finds "glass cladding" to mean "glass material that surrounds and protects a fiber core and confines electromagnetic radiation to the waveguide during its communication to the tip of the waveguide where the glass material need not contact the fiber core." The court finds "core cladding" to mean "a layer of material that surrounds a fiber core, that has an index of refraction lower than the index of refraction of the fiber core, and that is immediately adjacent to the fiber core."

Plaintiffs ask the court not to construe either term but to construe instead the general term "cladding." The claims nowhere refer to "cladding" independently; they refer only to "glass cladding" and "core cladding." Plaintiffs request that the court construe a term that does not appear in any claim, and the request is rejected.

Defendants ask the court to construe the terms "core cladding" and "glass cladding" identically. In doing so, the court would effectively find that the invention's core cladding is always made of glass and that glass cladding is never used anywhere but the core. This equation of "glass cladding" with "core cladding" is too restrictive and is rejected.

To defend their proposed construction, Defendants rely heavily on the patent specifications' occasional use of the phrase "doped fused silica" to refer to cladding. *See e.g.*, the '699 Patent, col. 11, lines 45–

57, cited in Defendants' Memorandum (Dkt. No. 89 at 17). Although it is axiomatic that "[t]he descriptive part of the specification aids in ascertaining the scope and meaning of the claims" and that "[t]he specification is, thus, the primary basis for construing the claims," *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed.Cir.2005)(internal citations omitted), the cited patent language does not in fact support Defendants' conclusion. The "doped silica" specification on which Defendants rely describes an experiment that used doped fused silica as core cladding. The '699 Patent, col. 11, line 47. An experiment's materials are necessarily particular; it does not follow that the chosen material is the only material contemplated by the invention or that all inventions citing that experiment may use only the described material. Defendants' other citations of the '699 Patent's supposed "synonymous usage" are similarly unsuited to generalization.

Moreover, Defendants ignore the key role played by the stipulated claim term "comprising." The parties stipulated to the definition of "comprising" as "including but not limited to the elements of the claim." *See* Dkt. No. 105–2; Dkt. No. 109–3.[3] The language of the claims describes core cladding and other components "comprising" particular materials. *See, e.g.*, Claim 5, which describes, "core cladding *comprising* a transmissive material," the '699 Patent, col. 15, line 35 (emphasis added). In some cases, the listed materials are glass or something similar. *See, e.g.*, Claim 24, which describes that the "core cladding *comprises* doped fused

---

the sense that it rejects Defendant's more restrictive language. See *Laser Peripherals*, 665 F.Supp.2d at 1031–32.

**3.** This definition comports with the well-established meaning of that phrase as a term of art in .the field of patent law. *See Georgia–*

*Pacific Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1327 (Fed.Cir.1999)("The transitional term 'comprising' ... is inclusive or open-ended and does not exclude additional, unrecited elements or method steps") (citing the Manual of Patent Examining Procedure).

quartz." The '699 Patent, col. 17, lines 24–26 (emphasis added); and Claim 25, which describes a surgical probe *"comprising: a waveguide having a tip with a glass cladding extending to a distal end of the tip."* The '699 Patent, col. 17, lines 28–29 (emphasis added). *See also* the language of the specification: "the core cladding *comprises* doped fuse quartz", the '699 Patent, col. 5, lines 8–9 (describing the first embodiment of the invention) (emphasis added). Under the stipulated definition of "comprising," it is clear that the listed components, those that "comprise" glass or doped fused quartz materials, may include *but are not limited to* those materials.

The intrinsic evidence contained in the patent, read in light of the claim terms whose meaning Defendants have stipulated to, squarely refutes Defendants' proposed equating of core and glass cladding. The court accordingly declines to adopt the proffered construction.

Judge Ericksen, in her *Laser Peripherals* memo, construed the term "glass cladding" as follows:

> glass material that surrounds and protects a fiber core and confines electromagnetic radiation to the waveguide during its communication to the tip of the waveguide where the glass material need not contact the fiber core.

*American Medical Systems v. Laser Peripherals,* 665 F.Supp.2d 1025, 1045 (D.Minn.2009). Regarding the final clause of the construction ("where the glass material need not contact the fiber core"), Judge Ericksen noted that the term "cladding," as used in the patent, is not limited to material in immediate contact with the fiber core. The description of Figures 9 and 9a states that, in a typical fiber optic, "an additional hard plastic cladding layer ... lies over the core cladding layer." The '699 Patent, col. 10, lines 48–50. Where the patent refers to two distinct layers as "cladding," a court should not construe the term to refer solely to the layer immediately surrounding the fiber core. If "cladding" can encompass material one layer removed from the core, it is reasonable to conclude that "glass cladding" may also encompass material located at a layer's remove.

The Minnesota District Court's construction is entirely reasonable and consistent with the intrinsic evidence of the '699 Patent. Given the awkwardness posed for the parties were different district courts to construe the same patent term differently, and the sound foundation for Judge Ericksen's construction, this court will adopt her construction of the term "glass cladding."

The *Laser Peripherals* memo does not construe "core cladding." This court will therefore construe the term independently.

The court bases its construction of the term "core cladding" on two key facts: (1) "core cladding," as used in the claims, consistently refers to material immediately adjacent to the fiber core, and (2) in order for the electromagnetic radiation to propagate efficiently along the waveguide core, the material immediately adjacent to and surrounding the core must have an index of refraction lower than the index of refraction of the core material. The court adopts these two observations and construes "core cladding" so as to encompass any material so situated and so constructed, as set forth at the beginning of this subsection.

C. *Index of Refraction (Independent Claim 5; Dependent Claims 4, 21, 26)*

■ The court finds the term "index of refraction" to mean "the ratio of the speed of light in a vacuum to the speed of light in a medium: the fraction, $v_{vacuum}/v_{medium}$."

There appears to be little dispute over the meaning of this term. Defendants adopt this fraction but wish to ensure that

the term is used contextually to refer to the specific material referenced in a particular claim. However, Plaintiffs do not dispute the fact that the core, cladding, and air gap have different indices of refraction and the court will adopt the most straightforward reading of "index of refraction." [4]

D. *"A transmitting surface on the tip of the waveguide having a particular area" (Claims 7, 8, 9, 16, 21, 22, and 23)*

Since the opening *Markman* briefs, as noted above, the parties have stipulated to the meanings of the terms "particular area", "lateral", and "waveguide." The only remaining term is "transmitting surface," and this term has been construed by the court, *supra.* No further discussion is needed.

E. *The 90% Limitations*

Independent Claim 1 and Dependent Claims 2 and 4 include the following limitation:

> wherein the particular area and the reflecting surface are disposed so that greater than about 90% of the electromagnetic radiation reflected by the reflecting surface is incident on the particular area at below a critical angle for transmission through the transmitting surface in the lateral direction.

The '699 Patent, col. 14, lines 59–64. Independent Claim 25 and Dependent Claims 26, 30, and 33 include a similar limitation:

> wherein at least 90% of all electromagnetic radiation reflected by the reflecting surface is incident on the transmitting surface at below a critical angle for

transmission through the transmitting surface.[5]

The '699 Patent, col. 17, lines 40–43.

■ Defendants contend that these limitations mean that the '699 Patent covers *only* devices in which greater than about 90%, or least 90%, of the radiation passes through the transmitting surface on the laser probe. Defendants' contention does not require actual claim construction by the court. There is no language that the parties require the court to define. The essence of Defendants' argument goes to the *breadth* of the patent and not the *meaning* of any specific claim term. Defendants have not asked the court to construe "CCDR", "90%", "at least", "about", "all or substantially all", "greater", "disposed" or any other terms that appear in the claim limitations. A claim construction proceeding is not the correct context in which to address the breadth of a patent. The breadth of the '699 Patent will be squarely before the court in subsequent stages of this litigation.[6] It is not necessary or appropriate to address the issue now.

F. *"Means for positioning the waveguide during surgery" (Claim 25)*

■ The court construes this term to encompass "(a) an endoscope, (b) a cystoscope, (c) an in-line scope, (d) a tube having a hollow passage, (e) a rigid cannula, (f) a flexible catheter, or (g) equivalents thereof."

■ The limitation expressed in the phrase "means for positioning the waveguide during surgery" is a "means-plus-function" limitation under 35 U.S.C. § 112

---

**4.** "Index of refraction" is not construed in *Laser Peripherals.*

**5.** Independent Claim 7 includes similar language, but the court holds that claim indefinite as a matter of law. See *infra.*

**6.** Defendants have asserted counterclaims for declaratory judgments of non-infringement and invalidity of the '699 Patent. (Dkt. No. 17.)

¶ 6. "A means-plus-function limitation recites a function to be performed rather than a definite structure or materials for performing that function." *Lockheed Martin Corp. v. Space Sys.*, 324 F.3d 1308, 1318 (Fed.Cir.2003)(citations omitted). A means-plus-function limitation "must be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." *Id.*

Defendants, citing the structures described in the specification for performing the positioning function, propose a definition limited to an endoscope, a cystoscope, or an in-line scope. This limited definition ignores language in the patent referring to other means. *See* the '699 Patent, col. 4, lines 18–23 ("rigid cannula"), col. 18, lines 12–15 (Claim 27, "hollow tube"), and col. 18, lines 16–19 (Claims 28–29, "flexible catheter"). Under the *Lockheed* rule, which requires inclusion of instruments described in the specification as "means," the additional devices must be included in the definition. Defendants' proposed definition is therefore supplemented appropriately.

G. *"Said reflecting surface ... at least 1.4X greater than the first width "* (Claim 7)

■ Defendants contend that Independent Claim 7 and Dependent Claims 8, 9, 16, 21, and 22 are invalid for indefiniteness. *See* 35 U.S.C. § 112 ¶ 2 ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention"). No construction is required of this claim, but courts commonly rule on any asserted claim indefiniteness when they construe patent claims. *See Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d

1374, 1378 (Fed.Cir.1999) ("A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims.").

Independent claim 7 reads as follows:

an apparatus for communicating and laterally directing electromagnetic radiation, comprising: ... a transmitting surface ... having a particular area within which radiation propagating in the lateral direction is incident at below a critical angle ... wherein at least 90% of all electromagnetic radiation reflected by the reflecting surface[.]

The '699 Patent, col. 15, lines 62–67. The final, limiting clause of the quoted passage is truncated; it lacks a verb.

■ A claim is indefinite within the meaning of 35 U.S.C. § 112 ¶ 2 where "it is impossible to discern the scope of a truncated limitation." *Allen Engineering Corp. v. Bartell Industries, Inc.*, 299 F.3d 1336, 1348–49 (Fed.Cir.2002). From the language of Claim 7, a reader cannot discern if the phrase intends to suggest that 90% of the radiation from within the fiber is reflected, or that 90% of the radiation strikes the prostate tissue, or perhaps does something else. The requisite 90% of the radiation may be reflected or some smaller percentage may be reflected, and 90% of the smaller percentage may perform some action. The claim language here is subject to multiple conflicting interpretations, dependant upon where a reader supplies the absent verb. Given this, the court must find this claim invalid for indefiniteness under the written description and enablement requirements of 35 U.S.C. § 112 ¶ 2.

■ Plaintiffs' only response—that Defendants understood the language when the parties served interrogatory answers—is obviously insufficient to render the claim language itself definite. The court may not rewrite the language of a claim to make sense of it. *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379,

1383 (Fed.Cir.2008). *See also Allen Engineering*, 299 F.3d at 1349 ("It is not our function to rewrite claims to preserve their validity"). It is the patent applicant's duty to define patent terms precisely. *In re Morris*, 127 F.3d 1048, 1056 (Fed.Cir. 1997).

Because it is impossible to determine the scope of the truncated limitation, this independent claim, and those that depend from it, are invalid for indefiniteness.

## IV. CONCLUSION

For the foregoing reasons, the disputed terms are construed as follows:

(1) "Transmitting surface" means "surface through which electromagnetic radiation is transmitted in the lateral direction";

(2) "Core Cladding" means "a layer of material that surrounds a fiber core, that has an index of refraction lower than the index of refraction of the fiber core, and that is immediately adjacent to the fiber core";

(3) "Glass Cladding" means "glass material that surrounds and protects a fiber core and confines electromagnetic radiation to the waveguide during its communication to the tip of the waveguide where the glass material need not contact the fiber core";

(4) "Index of Refraction" means "the ratio of the speed of light in a vacuum to the speed of light in a medium: the fraction $v_{vacuum}/v_{medium}$";

(5) "Means for positioning the waveguide during surgery" means "(a) an endoscope, (b) a cystoscope, (c) an in-line scope, (d) a tube having a hollow passage, (e) a rigid cannula, (f) a flexible catheter, or (g) equivalents thereof"; and

(6) Independent Claim 7 and Dependent Claims 8, 9, 16, 21, and 22 are invalid for indefiniteness under the written description and enablement requirements of 35 U.S.C. § 112 ¶ 2.

On May 1, 2009, the parties submitted a Joint Proposed Scheduling Order. (Dkt. No. 108.) On June 10, 2009, Defendants submitted a Joint Motion to Strike. (Dkt. No. 121.) In addition to this claim construction order, the court has, this day, issued a separate Scheduling Order and a Memorandum and Order Regarding Defendants' Motion to Strike.

It is So Ordered.